PROVIDENT NATIONAL BANK, Executor of the Estate of Abram L. Spector and Trustee under Paragraph 12 of the Will of Abram L. Spector, Appellant,

v.

UNITED STATES of America.

No. 77–2149.

United States Court of Appeals, Third Circuit.

Argued May 4, 1978.

Decided July 14, 1978.

Edward N. Polisher, Roslyn G. Pollack, Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., for appellant.

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Chief App. Section, Richard W. Perkins, and Richard Farber, Attys., Tax Div., U. S. Dept. of Justice, Washington, D. C., for appellee; David W. Marston, U. S. Atty., Philadelphia, Pa., of counsel.

Before ADAMS, VAN DUSEN and ROSENN, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This case concerns the proper federal estate tax treatment of the testamentary disposition of a decedent's controlling equity interest in a family-held closed corporation. More particularly, this appeal results from a tax refund suit which put in issue the allowance and valuation of a marital deduction from the value of a gross estate under I.R.C. § 2056. An appeal has been taken from a district court order granting the

Government's motion for summary judgment and denying the taxpayer's motion for summary judgment. We believe neither motion for summary judgment should have been granted and, accordingly, we remand for further proceedings consistent with this opinion.

## I.

Abram L. Spector died testate on May 11, 1966, survived by his widow, Ruth Spector, and four children. At the time of his death, the decedent was the controlling shareholder and chief operating officer of Dial Shoe Company (Dial), a closed, family-held, Pennsylvania corporation. Dial had outstanding 2,305 shares of common voting stock and 4,610 shares of common non-voting stock denominated Class A stock. The decedent owned in his name 1,380 shares of common voting stock and 2,196 shares of Class A stock. The decedent also was the sole shareholder of 4601 Frankford Avenue Corp., which owned, *inter alia*, 585 shares of Dial common voting stock and 1,170 shares of Class A stock. In total the decedent owned or controlled approximately 85% of Dial common voting stock and 73% of Dial Class A stock. The remaining outstanding shares of Dial were divided equally among the decedent's four children. Each child owned 85 shares of common voting stock and 311 shares of Class A stock. Stipulation of the parties filed Feb. 3, 1977 (118a).[1]

Paragraph 4 of decedent's probated will dated June 16, 1964, appointed Ruth Spector and the Provident Tradesmens Bank and Trust Company as trustees for a marital trust referred to as Trust # 1. Subparagraph 4(a) bequeathed to Trust # 1 "All Class A Common Stock of Dial Shoe Company, Inc. in my name (to be exchanged for Preferred Stock of Dial Shoe Company, Inc. as hereinafter provided)."[2] The primary beneficiary with respect to distribution of income and principal of Trust # 1 was decedent's wife, Ruth Spector. Paragraph 5 of decedent's will bequeathed to his adult son, Edward M. Spector, and adult daughter, Renee Silberman, and the Provident Tradesmens Bank and Trust Company as trustees to hold in a trust referred to as Trust # 2:

"(a) All Common Stock of Dial Shoe Company, Inc., in my name.

"(b) All Class A Common Stock and Common Stock of Dial Shoe Company, Inc., owned at the time of my death by 4601 Frankford Ave. Co., to be received in the liquidation of that corporation as hereinafter provided."[3]

Paragraph 6 of the will directed that the trustees of Trust # 2 shall manage and operate Dial and that the common stock held in Trust # 2 could not be disposed of without first offering to redeem at 105% of par the preferred stock issued in the recapitalization.[4] The primary beneficiaries entitled to distribution of income and principal from Trust # 2 were Edward M. Spector and Renee Silberman. Paragraph 7 of the will directed the executor to effectuate the recapitalization of Dial, which would provide that:

". . . Five Percent (5%) Preferred Stock be created and issued in exchange for the Class A Common Stock which has been bequeathed under Paragraph 4(a)

1. The decedent's two adult children, Edward M. Spector and Renee Silberman, owned outright their shares of Dial. Ruth Spector held as custodian the shares for the couple's two minor children, Joanne L. Spector and Mimi P. Spector. Ruth Spector herself owned no shares of Dial.

2. The remaining subparagraphs of paragraph 4 devised certain real estate holdings not here relevant to Trust # 1.

3. Paragraph 11 directed the executor to liquidate 4601 Frankford Ave. Corp., which was solely owned by decedent. Upon liquidation, all Class A and common voting stock of Dial were to be added to Trust # 2. All other assets of the dissolved company were to be added to the decedent's residuary estate, subject to special provisions for certain real estate interests not hereafter relevant.

4. Paragraph 8 provided that Edward M. Spector and Sol Silberman, the decedent's son-in-law, would conduct direct operation of Dial and that they would offer employment for the husbands of either of decedent's then unmarried minor daughters, Joanne L. and Mimi P. Spector.

hereof to the Trustees of Trust # 1; said Preferred Stock shall have a par value equal to the book value of the Class A Common Stock exchanged therefor, . . . .."[5]

The executor paid the estate tax on the basis of a tax return adjusted after administrative audit. The Commissioner after audit valued decedent's holdings of both Dial's common voting and Class A non-voting stock for inclusion in the adjusted gross estate at $157.00 per share as of the date of death.[6] The Commissioner allowed as a marital deduction decedent's bequest of the block of 2,196 shares of Class A non-voting common stock to Trust # 1 for the benefit of his wife. The Commissioner valued the stock comprising such marital bequest at $157.00 per share and limited the marital deduction to that amount.[7]

The executor filed a refund claim with the Commissioner and subsequently instituted a suit for refund in the United States District Court for the Eastern District of Pennsylvania on the ground that the Commissioner's assessment of the marital deduction was incorrect as a matter of law. The executor contended that the correct value for estate tax purposes of the equity interest bequeathed to the marital trust, Trust # 1, and eligible for the marital deduction was not $157.00 per share but, rather, $214.75 per share. This higher figure represented the book value of decedent's 2,196 shares of Class A common stock, which was directed in the will to be the exchange rate for the recapitalization of the 2,196 shares of Class A stock into a like number of 5% preferred shares with a par value of $214.75.[8] The executor did not seek a readjustment of values of any components of the adjusted gross estate.[9] Consequently, the executor asserted that the higher per share valuation of the marital bequest increased the amount of the allowable marital deduction, and correspondingly decreased the value of the taxable estate entitling the taxpayer to a refund of $33,-430.14.[10]

5. The preferred stock created by paragraph 7 was to yield quarterly dividends at an annual rate of 5% and, in the event of specified arrearages, control of Dial would vest in the holders of the preferred stock. The preferred stock carried a liquidation and call preference of 105% of par value.

6. The executor's tax return as filed prior to audit relied on an independent appraisal value of Dial common stock of $130.00 per share (141a).

7. The executor's tax return as filed prior to audit valued the stock constituting the marital bequest and deduction at $172.00 per share on the basis of an independent appraisal of the value of the preferred shares to be received by Mrs. Spector. Schedule M of Estate Tax Return, filed Feb. 8, 1968, by Provident National Bank, Executor of the Estate of Abram L. Spector.

8. In a tax refund suit, a taxpayer may recover for any erroneous overpayments of tax and may raise any issues of tax liability listed in the refund claim. *See Lewis v. Reynolds*, 284 U.S. 281, 283, 52 S.Ct. 145, 76 L.Ed. 293 (1932); I.R.C. §§ 6501, 7422(a), (b); 5 Rabkin & Johnson, Federal Income, Gift and Estate Taxation § 72.04(3) (1978). Thus, the executor in this case, in challenging the Commissioner's valuation of the stock comprising the marital deduction at $157.00 per share, was not bound by the original tax return's figure of $172.00. The

executor's claim for refund, which was filed first with the Commissioner and then became the basis of the district court suit, takes the position that the correct valuation of the stock comprising the marital deduction was $214.75 per share.

9. The executor's claim for refund, which is part of the district court record, assumes that decedent's entire equity interest in Dial as of the time of his death should be included in the adjusted gross estate at a per share value of $157.00.

10. Our rendition of the facts has focused on the per share values of Dial equity interests because the applicability of § 2056 may be best elaborated on these terms. For completeness' sake, we mention here some of the relevant aggregate figures. Based on a $157.00 per share value, decedent's equity holdings of 5,331 shares of Dial were worth $836,967.00. This aggregate amount was included in decedent's gross estate. Within this aggregate, the block of 2,196 shares of Class A common was worth $344,772.00 at $157.00 per share. The total marital deduction allowed by the Commissioner was $519,148.86, of which $344,772.00 represented the bequest of the block of 2,196 shares of Class A common. The remaining amount of the marital deduction was attributable to other property interests bequeathed and devised to Mrs. Spector whose values are not at issue in

Both the executor and the Commissioner filed motions for summary judgment. In a memorandum opinion (186a) and order (190a) dated June 24, 1977, the district court granted the Commissioner's motion for summary judgment and denied the executor's similar motion. An appeal was taken from this order and, as noted above, we reverse the grant of the Government's motion because genuine issues of material fact remain to be resolved.

## II.

I.R.C. § 2056(a) allows a marital deduction from the value of the adjusted gross estate in "an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate." Qualifications in the Code and Regulations exclude the deductibility of certain interests in property which passed from decedent to surviving spouse, these being so-called terminable interests. *Id.* at § 2056(b). To obtain the marital deduction, an executor must establish (1) that the property interest passed from decedent to spouse, (2) the value of that property interest, (3) that the property interest is a deductible interest, and (4) the value of decedent's adjusted gross estate. Treas. Reg. § 20.2056(a)–1(b).

### (A)

By statutory definition, an interest in property passes from decedent to surviving

spouse if such interest is bequeathed or devised to the spouse. I.R.C. § 2056(e)(1). At the outset we note that there is agreement between the parties that the surviving spouse's beneficial interest in the marital trust, Trust # 1, consisted of a life estate with power of appointment, qualifying whatever property interests passed by devise or bequest to that trust for the marital deduction as if they had passed directly to the wife.[11] We need, therefore, determine precisely what interest in Dial passed by decedent's will to his widow. *See* Treas. Reg. § 20.2056(e)–2.

Subparagraph 4(a) of decedent's will unambiguously bequeathed to his wife all Class A common stock held in his name, subject to a direction that it be exchanged for newly created preferred stock on the conversion basis specified in paragraph 7. This was the property interest which passed to decedent's surviving spouse and classifying this interest as either "Class A common stock" or "preferred stock" is neither necessary nor helpful. Section 2056(a) comprehends convertible equity interests whether the conversion is optional or mandatory. The will speaks for itself, and under Pennsylvania law this legacy of one class of stock, subject to a direction that it be exchanged for another class, vested in the widow at the time of death. *See Berger v. United States,* 285 F.Supp. 92 (E.D.Pa. 1968);[12] *In re Houston's Estate,* 414 Pa. 579, 591–96, 201 A.2d 592, 598–600 (1964).

---

this case. The executor's refund claim asserted that the aggregate value of decedent's bequest of his equity interest to his wife was $471,-591.00, on the basis of a per share value of $214.75, and concomitantly the aggregate value of interests deductible under § 2056 should have been increased from $519,148.86 to $645,-967.86. We note that the parallel increase in the marital bequest of Dial stock and the total marital deduction was in the amount of $126,-819.00. Because § 2056 limits the marital deduction to one-half of the adjusted gross estate, or $625,453.45, the executor readjusted the marital deduction to that figure. The refund sought of $33,430.14 represented approximately 17% of the total estate taxes paid of $187,-020.70.

**11.** For convenience we shall ignore the existence of the trust and refer to interests passing to the widow as if she had been the named beneficiary of the relevant provisions of decedent's will.

**12.** In *Berger,* the executrix sought a marital deduction for a bequest which directed that the trustees sell stock owned by the decedent and apply the proceeds to a trust for the benefit of decedent's widow, if living. Even the presence of this latter qualification, which is absent from decedent's will in the instant case, was held not to render the bequest contingent under Pennsylvania law. 285 F.Supp. at 93–94. Moreover, the court in *Berger* did not categorize the interest which passed as either stock or proceeds from the stock sale. More precisely, the

■ The Government takes the position that as of the time of death no preferred shares were in existence as the recapitalization had yet to be effectuated and that, therefore, no interest in the preferred stock passed from the decedent within the meaning of § 2056(a). This argument obscures the central economic and legal reality that decedent bequeathed to his wife an interest in a block of Class A common shares, which were to be mandatorily exchanged for preferred shares with certain attributes created by operation of the will. So understood, the widow's equity interest in Dial was created by the will, was in existence at the time of death, and therefore passed from decedent to her.[13]

#### (B)

As important as identification of the property interest which passed from decedent to his widow is valuation of that interest. The Government would value the property interest bequeathed in the will as the audited value of the Class A common stock of $157.00 per share. The taxpayer would value the property interest which passed in the will as the par value of the preferred stock received in the exchange of $214.75 per share. We reiterate that the proper measure is of neither the Class A common stock as such nor the preferred stock as such, but rather of the value of those Class A common shares subject to the testamentary directive of exchange for preferred shares.

■ It is well settled that the nature of the interest in property passing to the surviving spouse and the valuation of that interest are to be determined as of the time of decedent's death. *Jackson v. United States*, 376 U.S. 503, 508, 84 S.Ct. 869, 11 L.Ed.2d 871 (1964); Treas.Reg. § 20.-2056(b)–4. As a corollary, whenever an interest in property is bequeathed or devised subject to directions which may require subsequent disposition, the Code and Regulations contemplate that the deductible interest be valued in light of the impact of the directives on the present value of the interest as of the time of death. The correct value for tax purposes is not the value after the directives are implemented but the present value at the time of death, when the will becomes operative and the interest in property becomes subject to future directives.[14]

■ For example, common stock bequeathed subject to an irrevocable option to purchase by a third party, which leaves the legatee no choice but to sell the stock at the option price stipulated in the will, is generally valued for tax purposes at the option price, not the market price of unencumbered common stock. *See Delone v. Commissioner*, 6 T.C. 1188, 1192–93 (1946).[15] A devise to a spouse of real property valued at $25,000. with a direction that the spouse subsequently pay $5,000. in cash to a relative is valued for purposes of the marital deduction at $20,000., reflecting the effect of the direction at the time of death. Treas.Reg. § 20.2056(b)–4(b), Example (1). In like manner, if income from property is

---

interest was in stock subject to a direction that it be sold for cash.

**13.** Decedent's bequest to his wife was an integral part of his testamentary disposition of his Dial equity holdings. Decedent desired to assure his widow of a relatively stable and secure source of income from Dial. With this in mind, decedent provided for the recapitalization and the creation of the preferred stock to take place at his death so that in his lifetime the earnings of Dial would not necessarily have to be distributed but could be retained for reinvestment. Thus, there is evidence that decedent's disposition of his Dial stock and his marital bequest fulfilled legitimate business and testamentary purposes and were not mere tax avoidance

devices. *See Gregory v. Helvering*, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935).

**14.** Present values of interests subject to future disposition will depend in part on the likelihood of disposition, the expected future value of the interest received after disposition, and a time discount rate. *See, e. g.*, Treas.Reg. § 20.2031–7(d) (valuation of remainder interests based on life expectancy rates, future value of remainder interest, and time discount rate).

**15.** In *Delone* the Tax Court was concerned with the determination of the proper basis of the interest in property received under a marital bequest.

devised as a life estate to a person other than the surviving spouse but the remainder is devised absolutely to the spouse, this remainder interest is deductible under § 2056 in the amount of the present value of the remainder. Such present value is determined on the basis of probabilities of various uncertain factors, such as life expectancy of the life tenant and value of the property at the life tenant's death. Treas. Reg. § 20.2056(b)–4(d). In sum, the foregoing examples from the case law and Regulations demonstrate that, where a will directs future disposition of an interest in property which qualifies for the marital deduction, such disposition is taken into account in determining the *present* value of the interest in property.

■ As of the time of decedent's death, the will's directive that the Class A block of shares be exchanged for preferred shares would likely have altered the value of that block from what it would have been had there been no such directive. The audited value relied on by the Commissioner and upheld by the district court of $157.00 per share for all Dial common stock did not reflect the will's direction that a recapitalization be effectuated which would alter the relative values of different classes of Dial equity. The audited value, by ignoring the likely effect of the recapitalization, was not measured as of the time of decedent's death. The audit clearly assumed that each Dial common share, voting and Class A non-voting, was of equal value having a proportionate claim on Dial's earnings. The recapitalization was plainly designed to alter this equivalence of share values by creating new securities, preferred stock, with greater proportionate claims on Dial's earnings than were left the remaining common stock shares. Since the recapitalization would not alter the net worth or the going concern value of Dial, a block of Class

A shares would become relatively more valuable while the remaining common shares, the voting stock and the non-exchanged Class A stock, would become correspondingly less valuable.[16]

The Government's motion for summary judgment (121a) and supporting materials (122–51a) do not provide any measure of the value of the properly identified property interest which passed to decedent's wife. The only measure of value contained in the Government's Rule 56 submissions was the audited value of Dial common shares *prior* to decedent's death. Such value did not account for the will's directive to recapitalize the block of Class A shares. In the absence of a factual basis in the Government's submissions for valuing the present value of decedent's marital bequest, summary judgment should not have been granted in its favor.

Similarly, the taxpayer's motion for summary judgment (164–65a) and its supporting interrogatories (27–29a; 113–17a) offer no accurate measure of the properly identified property interest which passed to decedent's wife. The taxpayer merely asserts that the present value of the Class A shares at the time of death was worth the par or face value of the preferred shares, $214.75 per share, for which the Class A shares were to be exchanged. This factual claim is erroneous. As explained below, in section C, the par value bears no certain relation to the actual value of the block of Class A shares subject to exchange as of the time of the decedent's death. Consequently, we believe that a genuine issue of material fact exists on the record which was before the district court and is now before us. Summary judgment having been improper for either moving party, we remand to the district court for further factual development of the present value at the time of decedent's death of the interest in property which passed to the surviving wife.

**16.** Fewer shares were to be exchanged than were preserved in the recapitalization and, since the aggregate amount of the increase to one block must balance the decrease to the aggregate value of the remaining shares, the *per share* increase in the Class A block exchanged for preferred shares would be greater than the *per share* decrease in the remaining common stock. For the sake of illustration only, were the Class A block worth $214.75 per share, the per share value of the remaining Dial common stock would have been reduced to approximately $130.00.

(C)

Two sources of uncertainty preclude determination on the existing record of the present value as of the time of death of the block of Class A shares directed to be exchanged for the preferred shares with par values of $214.75. First, there may have been some doubt as to whether decedent's widow would realize the full value of the exchange contemplated in the will. The prospect of a challenge by some minority shareholders would likely have affected the market value as of the time of death of the block of shares bequeathed to the surviving spouse. Second, and more fundamental, even if decedent's wife would not be liable to relinquish part of the value of the preferred shares bequeathed in the will, the actual present value of those shares at the time of decedent's death was not necessarily their par or face value. These two sources of uncertainty must be considered in further proceedings.

The uncertainty as to the extent of realization of the mandated exchange is twofold—would any minority shareholders be legally entitled to restitution or rescission of the exchange and, if so, what effect would the likely relief have on the value of the preferred stock received by the widow? The district court reasoned that disgruntled minority shareholders could maintain a cause of action under Pennsylvania law to recover the loss in value of their holdings as a result of the recapitalization. But neither the district court nor the parties have identified which minority shareholders would be disgruntled. The recapitalization was part and parcel of the will's disposition of decedent's entire controlling share of Dial. The two adult children who were minority shareholders prior to decedent's death became majority shareholders with voting control of Dial. While the per share value of their holdings decreased by operation of the will, the aggregate value of their holdings increased. Consequently, the adult children suffered no loss in decedent's disposition of his equity interest.

The minor children, by contrast, received no additional shares from decedent's will and, consequently, suffered a loss of value in per share and aggregate value terms. But the extent of this loss was considerably less than the increase in the aggregate and per share values of the block of Class A shares bequeathed decedent's widow. Consequently, even if the par value of the preferred shares might be reduced by judicial action at the behest of the minor children, the reduction would not be to $157.00 per share. Valuation of the marital deduction must take into account the likelihood and extent of such judicially mandated recapitalization.[17]

The second and more significant uncertainty as to the present value of the block of Class A shares inhered even if the recapitalization were effectuated without chal-

---

17. The net effect on each of the children's equity interest in Dial can perhaps best be illustrated numerically. For purposes of illustration only, let us assume that the Class A shares were to be exchanged for preferred shares with present market values of $214.75.

The aggregate value of each of the four children's shareholdings of 406 shares of common stock at $157.00 per share, in the absence of a direction to recapitalize, was $62,172. The block of 2,196 Class A shares was valued at $344,772. and decedent's remaining 3,135 shares were worth $492,195. The aggregate value of decedent's holdings was $836,967. The total value of Dial equity was $1,085,655.

At decedent's death, when the direction to recapitalize took effect, the value of the Class A block at $214.75 per share became worth $471,591. Because the total value of Dial equity remained unchanged, the remaining 4,719 shares of Dial common stock were worth an aggregate amount of $614,064. at a per share value of approximately $130.00. (the per share figure has been rounded off). Each of the four children's pre-will holdings became worth $52,-780. However, each of the two adult children received a bequest of 1,567.5 shares from decedent worth $203,775. Consequently, by operation of the will, each of the two adult children gained $194,383. The two minor children received no legacy in the will and hence lost value of $9,392. Combined, the two minor children suffered losses of only $18,784. The widow, by contrast, received a block of shares worth $126,819. more than it had been worth prior to decedent's death. Thus, under the most pessimistic assumption, decedent's surviving spouse's contingent liability was only approximately 15% ($18,784./$126,819.) of the increase in value of her preferred shares.

lenge. This uncertainty concerned the actual or market value of the preferred shares for which the Class A block of shares was to be exchanged on a one-to-one basis. The preferred shares carried a face or par value of $214.75 and bore an annual dividend payout rate of 5%. The par or face value corresponded to the book value of the Class A common shares as directed in the will. The par or face value did not correspond to a purchase price but, instead, was an arbitrary figure assigned by the decedent for purposes of calculating dividends. This arbitrary book value did not *ipso facto* become the market value of the preferred shares. The 5% annual dividend was calculated against the par value of $214.75. The actual or market value of the shares depended on the risk of default on the dividends, the arrearage provisions, and the relationship of the 5% dividend rate to other market interest rates available to investors in comparably risky securities. For if the investment market offers interest rates greater than 5% at comparable risk, the preferred shares would not be worth their face value.[18] Thus, there was no necessary economic equivalence between the face val-

ue of the preferred shares and the market value of those same shares.[19]

The record before us does not resolve the aforementioned uncertainties as to the value of the block of Class A shares subject to exchange for the 5% preferred shares. On remand, consideration of the relevant factors influencing the present value of decedent's marital bequest can be given by the district court on the basis of a fuller factual record.[20]

(D)

■ Having elaborated an acceptable valuation measure of decedent's equity interest in Dial and of decedent's marital bequest, we turn to the question whether that bequest was non-deductible by operation of the terminable interest provision of the Code. Section 2056(b)(1) renders nondeductible certain terminable interests which, although passed to the surviving spouse, may by some event or contingency ultimately pass to any other person for less than full consideration and would ultimately not be included in the surviving spouse's gross estate.[21] The district court ruled that insofar as the executor insisted that the

18. To illustrate this fundamental rule of valuation, let us assume that these Dial preferred shares with par value of $214.75 yielded dividends at a 5% annual rate. The shareholder would receive approximately $10.74 each year. If the same shareholder could receive the same total yield of $10.74 by purchasing a less risky Government or corporate bond for $107.47—an annual interest rate of 10%—then he would not pay $214.75 for the more risky preferred shares of a private, closely held corporation. The actual value of the Dial preferred shares depended not solely on their par value but also on the relative risks and rates of return available in other comparable investments.

19. We note that the executor, in filing the original tax return, relied on an appraisal of $172.00 per share for the preferred stock. *See* note 7, *supra*. While the record before the district court on motions for summary judgment does not shed light on the correctness of this appraisal, the discrepancy between the appraisal and face value underscores the need, on remand, for careful factual development of the value of the block of Class A shares bequeathed to the surviving spouse.

20. The Regulations offer guidance in valuing securities of closely held corporations such as

Dial, which lack bona fide bid and ask prices or actual sale prices. Treas.Reg. § 20.2031–2(f) requires consideration of the following factors in calculating fair market value:
> "(1) In the case of corporate or other bonds, the soundness of the security, the interest yield, the date of maturity, and other relevant factors; and
> "(2) In the case of shares of stock, the company's net worth, prospective earning power and dividend-paying capacity, and other relevant factors."

21. I.R.C. § 2056(b)(1) provides in pertinent part:
> "(b) Limitation in the case of life estate or other terminable interests.—
> "(1) General rule.—Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—
> "(A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and

property interest which passed to decedent's wife was the preferred stock, that stock was "acquired" for the spouse by the executor and was, therefore, non-deductible under § 2056(b)(1)(C). The court also held that the preferred stock could fail in the event that minority shareholders would sue to challenge the recapitalization and, hence, the stock was a terminable and non-deductible interest under the general rule of § 2056(b)(1).

We have already determined that the interest in property which passed to decedent's widow was not the preferred stock but the Class A block subject to the direction for exchange. So identified, this interest was not an after-acquired interest. While the will may direct the executor to take actions which would affect the interest, it vested and was in that form acquired by the spouse at the time of death and, therefore, was not non-deductible under § 2056(b)(1)(C).[22]

We also do not believe that the property interest which passed to decedent's widow was non-deductible under §§ 2056(b)(1)(A) and (B). The first requirement of these provisions is that the surviving spouse's interest be subject to the possibility of "terminating" or "failing" on the occurrence of an event or contingency.[23] The second and third requirements of the conjunctive provisions (A) and (B) are that the interest in property pass from the *decedent* to any person other than the surviving spouse for less than full consideration and that such other person may possess or enjoy such property after the termination of the interest passing to the surviving spouse. The district court held that the widow's interest in the preferred stock would fail if, as was possible, the minority shareholders successfully challenged the recapitalization and won restitution of any amount received in excess of $157.00 per share. The district court did not explicitly address the other two requirements of non-deductibility.

We find it unnecessary to determine in this context the likelihood of whether Pennsylvania law would require that decedent's widow make restitution of the benefits of an improper recapitalization. It seems clear to us that even were a court to invalidate the recapitalization and order restitution of benefits to the minor children as minority shareholders, the equity interest in Dial would not thereby *pass from the decedent* to the shareholders within the meaning of § 2056(b)(1)(A).

Section 2056(e) exclusively defines the means by which an interest passes from decedent to another person.[24] The hypothetical restitution of benefits from the preferred shareholder, Mrs. Spector, to the mi-

"(B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse;

and no deduction shall be allowed with respect to such interest (even if such deduction is not disallowed under subparagraphs (A) and (B))—

"(C) if such interest is to be acquired for the surviving spouse, pursuant to directions of the decedent, by his executor or by the trustee of a trust."

22. The after-acquired property exception to deductibility properly applies to bequests of cash with directions to the executor to purchase terminable interests such as annuities. *See* Treas.Reg. §§ 20.2056(b)–1(f), (g), Example (7).

23. *See Hamilton Nat'l Bank v. United States*, 353 F.2d 930, 931–32 (6th Cir. 1965) ("critical factor in applying the terminable interest rules is the possibility under state law of the failure of an interest rather than the actual failure").

24. Section 2056(e) provides in pertinent part:

"(e) Definition.—For purposes of this section, an interest in property shall be considered as passing from the decedent to any person if and only if—

"(1) such interest is bequeathed or devised to such person by the decedent;

"(2) such interest is inherited by such person from the decedent;

"(3) such interest is the dower or curtesy interest (or statutory interest in lieu thereof) of such person as surviving spouse of the decedent;

"(4) such interest has been transferred to such person by the decedent at any time;

"(5) such interest was, at the time of the decedent's death, held by such person and the decedent (or by them and any other person) in joint ownership with right of survivorship;

"(6) the decedent had the power (either alone or in conjunction with any person) to appoint such interest and if he appoints or has appointed such interest to such person,

nority shareholders, her minor daughters, would not represent a bequest, devise, inheritance, or transfer from the decedent. While Mrs. Spector's interest could be said to "fail" if restitution were ordered, the interest would not revert to decedent's residuary estate nor would it be disposed of by reference to decedent's will. That the minor children would receive no interest in property from decedent is made clear by the fact that restitution would leave them in the same position they had been in prior to decedent's death. Decedent's minor children would have the same equity interest in Dial after restitution as they had prior to testamentary disposition of decedent's assets. Therefore, no interest in property would pass from decedent to his youngest children.

Some interests which fail or terminate after passing to the surviving spouse may pass again to a third person and hence become non-deductible. The Regulations illustrate such interests by reference to a bequest of a life interest to the spouse and remainder to others or to the residuary estate. Treas.Reg. §§ 20.2056(b)–1(g), Examples (1)–(8). In each example decedent's assets are eventually distributed by operation of the will to persons other than the spouse. In this case, by contrast, decedent's bequest vested unconditionally in his wife, and liabilities incurred by her to give restitution as a preferred shareholder were personal to her. Decedent did not bequeath any interest in Dial to his minor children in the event that the bequest to his wife were to fail. Accordingly, we conclude that decedent's bequest to his wife was not non-deductible under § 2056(b)(1).

### (E)

■ Having concluded that the marital bequest was deductible, we consider finally two possible limitations on the amount of the bequest includible as a marital deduc-

tion. Section 2056 limits the extent of a marital deduction in two respects to the value of the gross estate. Subsection (c) limits the aggregate marital deduction to a maximum of 50% of the adjusted gross estate. I.R.C. § 2056(c). Subsection (a) limits the amount of each component property interest included in the marital deduction to the "extent that such interest is included in determining the value of the gross estate." *Id.* § 2056(a). The district court reasoned that, because the estate valued its common shares at $157.00, it could not deduct those same shares at a higher value. Moreover, if the taxpayer were correct that the preferred stock was worth $214.75, that amount should be reflected in the value of the gross estate. The taxpayer counters that the district court imposed a false symmetry upon the valuation of decedent's bequest. The taxpayer argues that the total value of decedent's equity interest was included in the value of the gross estate at $157.00 per share and that the higher per share figure attributed to the marital bequests represents a different relative distribution among the legatees. Implicitly the taxpayer contends that, while Mrs. Spector received an interest worth $214.75 per share, the other legacies of Dial stock were worth an equivalent amount less than $157.00 per share. Both parties have missed the central point that as of the time of decedent's death there can be only one value for each equity interest in Dial. This value must be considered for calculating both the adjusted gross estate and the marital deduction.[25] At the time of death, some of decedent's common stock—the block of Class A shares bequeathed to his wife—was worth more than $157.00 and his remaining shareholdings were worth less than $157.00.

These adjustments did not cancel each other out. With the prospect of recapitalization, decedent's total equity holdings

---

or if such person takes such interest in default on the release or nonexercise of such power; or

"(7) such interest consists of proceeds of insurance on the life of the decedent receivable by such person."

**25.** *Compare* Treas.Reg. § 20.2031–1(b) (value of every item of property includible in a decedent's gross estate is its fair market value at the time of the decedent's death) and Treas. Reg. § 20.2056(b)–4(a) (value of interest for the purpose of marital deduction is determined as of date of decedent's death).

were worth more than they would have been had there been no recapitalization directed in his will.[26] Thus, it is clear that the executor's tax return as filed after audit incorrectly valued both the gross estate and the marital deduction. The amount of refund due, if any, depends on the revaluation of decedent's equity interest as of the time of his death. This revaluation must be undertaken in the district court on remand.[27]

### III.

In summary, we will reverse the district court's grant of the Government's motion for summary judgment and will remand the case for further proceedings consistent with this opinion.

---

26. See note 16, *supra.*

27. Our decision necessitates a recalculation of the marital deduction and the adjusted gross estate in order that the estate's tax liability be determined consistent with our construction of § 2056. It is true that at each stage of the proceedings in this case, from the filing of the refund claim through this appeal, the taxpayer has challenged only the Commissioner's valuation of the marital deduction but not the valuation of the adjusted gross estate. However, as we have explained at length above, the block of Class A shares bequeathed to decedent's wife subject to the recapitalization directive must be given the same value, measured at the time of decedent's death, for both purposes of the marital deduction and the adjusted gross estate. The taxpayer has never stipulated that the value of the block of Class A shares at the time of decedent's death was $157.00 per share. Rather, the taxpayer has consistently contended that the stock comprising the marital bequest should be valued at $214.75 per share. Neither figure reflects the market value as of the time of decedent's death of the Class A shares subject to the recapitalization directive. Consequently, we believe it proper in this case to remand for recalculation of the marital deduction and the adjusted gross estate, for both must reflect the market value as of the time of decedent's death of the block of Class A shares subject to the recapitalization directive.