**PROVIDENT NATIONAL BANK, Executor of the Estate of Abram L. Spector and Trustee under Paragraph 12 of the Will of Abram L. Spector**

v.

**UNITED STATES of America.**

Civ. A. No. 76–2990.

United States District Court,
E. D. Pennsylvania.

June 24, 1977.

Roslyn G. Pollack, Philadelphia, Pa., for plaintiff.

Joseph M. Gontram, U. S. Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM

HUYETT, District Judge.

Provident National Bank, the executor of the estate of Abram L. Spector, filed this suit against the United States, seeking a refund of $33,430.14 in federal estate tax paid in excess of the amount allegedly due. The dispute centers on the construction of the marital deduction, 26 U.S.C. § 2056. Subject to certain definitions and limitations, that section permits the estate to deduct from the value of the gross estate the lesser of one-half of the adjusted gross estate or the value of "any interest in property which passes or has passed from the decedent to his surviving spouse". 26 U.S.C. § 2056(a). Before us are the parties' cross-motions for summary judgment. Because the deduction claimed by the estate runs afoul of § 2056 in three distinct ways, we shall grant the Government's motion and deny the estate's.

### A.

Abram L. Spector owned 2196 of 4610 outstanding shares of class A common, non-voting stock in Dial Shoe Company. Paragraph 4 of his Will bequeathed all of the decedent's 2196 shares to a trust for the benefit of his wife, Ruth Spector. That stock was "to be exchanged for preferred stock of Dial Shoe Company" pursuant to paragraph 7 of the Will. Paragraph 7 directed the executor to "cause the recapitalization of Dial Shoe Company, Inc., which shall provide that Five Percent (5%) Preferred Stock be created and issued in exchange for the Class A Common Stock."

The estate tax return reported the 2196 shares of Class A Common Stock as an asset of the estate, valuing it at $285,480 or $130 per share. For purposes of computing the marital deduction, the estate on Schedule M deducted the value of the converted preferred stock; that value was pegged at $377,712 or $172 per share. The parties have now stipulated that the value of the common stock was $157 per share, or a total of $344,772. The estate by its federal complaint now seeks to take a deduction of $214.75 per share for the stock.

### B.

In order to qualify for the marital deduction, Mrs. Spector's interest in the preferred stock must have passed from the decedent to her. 26 U.S.C. § 2056(a). According to 26 U.S.C. § 2056(e)(1) "an interest in property shall be considered as passing from the decedent to any person if and only if—such interest is bequeathed or devised to such person by the decedent".*

---

* Section 2056(e) lists six other circumstances in which an interest in property will be deemed to pass, but none are relevant here.

Paragraph 4 of the Will expressly bequeathed to a trust for the benefit of Ruth Spector the Class A Common Stock, not the preferred stock for which the common stock was later to be exchanged. Measuring the surviving spouse's property interest as of the date of the decedent's death, *see Jackson v. United States*, 376 U.S. 503, 508, 84 S.Ct. 869, 11 L.Ed.2d 871 (1964), Mrs. Spector acquired a beneficial interest in 2196 of Class A Common Stock which—only at some undetermined future time—were to be converted into preferred stock following the recapitalization of the Dial Shoe Company. In short, the decedent never had an interest in any preferred stock that he could have passed to his surviving spouse. The preferred stock was created after his death. Thus, the estate was entitled to claim only the value of the common stock on the date of decedent's death.

### C.

 Section 2056(c)(1) states that if an interest in property is to be acquired for the surviving spouse, at the direction of the decedent, by the executor or a trustee and if that interest will terminate or fail on the occurrence of some contingency, then it is disqualified for marital deduction treatment. In this case the preferred stock was an interest in property that was to be acquired for Mrs. Spector by the executor pursuant to directions from the decedent. Thus the only dispute on this point is whether there exists some contingency that would cause the widow's interest in the preferred stock to terminate. The estate admits that the increased value of the preferred stock over the common stock was "at the expense of the remaining shareholders, whose stock decreased in value as a result of the mandatory recapitalization." (Estate Claim for Refund; Exhibit 2 to Government Summary Judgment Motion, at 4). This fact, the Government contends, renders the preferred stock vulnerable to a minority shareholder's suit for rescission. We agree.

 Under Pennsylvania law, majority shareholders are fiduciaries, and they may not use their voting power to benefit themselves personally at the expense of the minority. *Lowman v. Harvey R. Pierce Co.*, 276 Pa. 382, 120 A. 404 (1923). Since the enhanced value of the 2196 shares of preferred stock decreased the value of the nonvoting Class A Common Stock held by other shareholders, a disgruntled minority shareholder would have a cause of action in the Pennsylvania courts to redress his loss. The estate contends that the Dial Shoe Company is a closely held family corporation and that no family members are about to bring suit against Mrs. Spector because she might have benefitted from the recapitalization at their expense. But this is no answer, for it is only necessary that the Government prove that the interest *could* fail. *Hamilton National Bank v. United States*, 353 F.2d 930 (6th Cir. 1965). The preferred stock is therefore a terminable interest within the meaning of 26 U.S.C. § 2056(b).

### D.

 Assuming arguendo that the estate is entitled to claim the value of the preferred stock as part of the marital deduction, it may claim the deduction but "only to the extent that such interest is included in determining the value of the gross estate." 26 U.S.C. § 2056(a). As we understand the present position of the estate, it seeks to include the value of the common stock at $157 per share as an asset and, at the same time, to take the value of the preferred stock at $214.75 as part of the marital deduction. The estate cannot have it both ways under the plain language of the statute. If the estate is correct that the preferred stock qualifies for the marital deduction, they are entitled to deduct the value of the preferred stock at $214.75 per share (or whatever its value is ultimately determined to be), in which case it must be listed as an asset of the gross estate at $214.75 per share. But if, as we believe, the Government is correct and only the common stock passed to the decedent, the estate must report the shares as an asset at $157 per share and take the marital deduction at the same value.