ESTATE OF HAZARD E. REEVES, DECEASED, ALEXANDER G. REEVES, HARRY MILLER, AND THE BANK OF NEW YORK, CO-EXECUTORS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 28208–90.                    Filed May 17, 1993.

*Alfred Wheeler,* for petitioner.
*Michael Goldbas,* for respondent.

HAMBLEN, *Chief Judge:* Respondent determined a deficiency in the Federal estate tax of the Estate of Hazard E. Reeves (petitioner) in the amount of $1,100,700.69. This case is before the Court pursuant to Rule 122 on the parties' fully stipulated facts. The issue for our decision is whether the marital deduction must be adjusted to reflect the deduction allowed for the sale of employer shares to an employee stock ownership plan (ESOP) under section 2057.

Unless otherwise noted, all section references are to the Internal Revenue Code in effect at decedent's date of death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

### FINDINGS OF FACT

All of the facts have been stipulated pursuant to Rule 91. The stipulation of facts and exhibits are incorporated as our findings by this reference.

At the time of the filing of the petition in this case, two of the executors of decedent's estate were residents of the State of New York, and one was a resident of the State of New Hampshire. The estate's mailing address was in New York, New York.

On October 30, 1985, Hazard E. Reeves (decedent) executed his last will and testament (will). On November 20, 1985, and February 25, 1986, respectively, decedent executed a first and a second codicil to his will. Under the terms of the will and the codicils thereto, decedent appointed Alexander G. Reeves, Harry Miller, and Bank of New York as executors of his estate. In addition, decedent made specific bequests of personal property to named individuals and his surviving spouse. Further, he made general cash bequests to individuals other than his surviving spouse. Decedent did

not, however, specifically bequeath his interest in 511,116 shares of Realtron Corp. class A common stock. Realtron is a domestic corporation whose shares are not publicly traded.

Article 12, subpart(c) of the will grants to the executors the power "[to] sell at public or private sale and to exchange or otherwise dispose of any stocks, bonds, securities, or other personal property constituting assets of my estate not specifically bequeathed."

Decedent bequeathed the residue of his estate to a trust. The trust's terms direct the trustees to pay the net income from the trust at least quarterly to, or for the benefit of, decedent's surviving spouse. The principal of the trust could be used by the trustees for the support, maintenance, and welfare of decedent's surviving spouse. Decedent directed that the remainder interest of the trust be used to pay estate taxes owed by his surviving spouse's estate and then distributed to her grandchildren.

Decedent died on December 23, 1986. In September 1987, the executors sold the 511,116 shares of Realtron stock to Realtron's employee stock ownership plan for the amount of $2,555,580.

On March 23, 1988, pursuant to an extension, the executors timely filed a Federal estate tax return. They valued the gross estate as of decedent's date of death at $20,410,045.55, which included the 511,116 shares of Realtron Corp. class A common stock, valued at $5,111,160.[1] On the return, the executors claimed a marital deduction of $11,583,568, made up of the following items:

(1) One-half of the value of the property held jointly, prior to decedent's death, which passed to decedent's surviving spouse by operation of law;

(2) the value of the tangible personal property bequeathed to decedent's surviving spouse; and

(3) the net fair market value of the residuary bequest which was treated as qualified terminable interest property (QTIP) pursuant to section 2056(b)(7). In determining the value of the residuary, the executors included the $5,111,160 "date of death" value of the Realtron shares.[2]

---

[1] The record does not explain why, 9 months after decedent's death, the Realtron shares were sold for half their value on the date of his death.

[2] On a rider to Schedule M of its estate tax return, petitioner computed the marital deduction

The executors also claimed a deduction from the gross estate of $1,277,790, pursuant to section 2057. The deduction so reported equals 50 percent of the proceeds from the sale of the Realtron stock to the Realtron employee stock ownership plan.

OPINION

## 1. *The Marital Deduction*

Section 2056 permits an estate to claim a marital deduction for the value of property interests passing outright from a decedent to the decedent's surviving spouse "except as limited by subsection (b)". One of the limitations in subsection (b) is the denial of deductibility for a "terminable interest". Sec. 2056(b)(1). That, generally, is a property interest that will terminate or fail "on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur". Sec. 2056(b)(1).

Section 2056(b)(7) contains an exception to this "terminable interest rule". It provides a marital deduction for "qualified terminable interest property". That, generally, is property which passes to the surviving spouse from the decedent, from which the surviving spouse can claim "all the income from the property, payable annually or at more fre-

---

as follows:

*Bequests to Surviving Spouse*

| Item No. | Description | Value |
|---|---|---|
| 1. | Joint property passing by operation of law (Schedule E) | $825,000.00 |
| 2. | Tangible personal property (Schedule F, Item 7) bequeathed under Article THIRD (b) | 12,600.00 |
| 3. | Residuary estate bequeathed under Article EIGHTH to Alexander G. Reeves, Harry Miller and the Bank of New York as Trustees for the benefit of Annette B. Reeves to pay income to her for life Value of trust calculated as follows: | |
| | Gross estate | 20,410,045.55 |
| | Less: Joint property | (825,000.00) |
| | Tangible personal property | (12,600.00) |
| | Legacies | (50,000.00) |
| | Charitable bequest | (1,049,693.00) |
| | Nonmarital trust | (3,250,000.00) |
| | Administration expenses | (1,105,653.24) |
| | Debts | (1,162,610.21) |
| | Mortgages | (94,940.55) |
| | Net residuary estate before death taxes | 12,859,548.55 |
| TOTAL | | 13,697,148.55 |

quent intervals", and, while she is alive, no one else can appoint any part of the property to anyone but her. Sec. 2056(b)(7).

Here, the parties agree that the executors properly elected to treat the lifetime interest in the residuary trust bequeathed to decedent's surviving spouse as a terminable interest that qualifies for QTIP treatment. Satisfaction of the conditions of section 2056(b)(7) is not in controversy.

## 2. *Limitation on Double Deductions*

Section 2056(b)(9) was added as a technical correction to the marital deduction provisions. Technical Corrections Act of 1982, Pub. L. 97-448, sec. 104(a)(2)(A), 96 Stat. 2365, 2380. Section 2056(b)(9) provides as follows:

> (9) DENIAL OF DOUBLE DEDUCTION.—Nothing in this section or any other provision of this chapter shall allow the value of any interest in property to be deducted under this chapter more than once with respect to the same decedent.

Apparently, the only legislative material regarding section 2056(b)(9) is a statement in a staff report prepared for the use of the Committee on Ways and Means. That report states the purpose of section 2056(b)(9) as follows:

> In order to insure that there is not a double deduction as a marital deduction and a charitable deduction for charitable remainder interests, the bill would clarify that the value of any interest in property may be deducted only once in computing the estate tax or gift tax liability. [Staff of Joint Comm. on Taxation, Description of H.R. 6056, Technical Corrections Act of 1982, at 12 (J. Comm. Print 1982).]

## 3. *Section 2057*

Section 2057, enacted as part of the Tax Reform Act of 1986, Pub. L. 99-514, sec. 1172(a), 100 Stat 2085, 2513-2515, provided in pertinent part:

> SEC. 2057(a). GENERAL RULE.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate an amount equal to 50 percent of the qualified proceeds of a qualified sale of employer securities.

In sum, section 2057 provides an estate tax deduction for 50 percent of the proceeds from a sale of employer securities to an employee stock ownership plan (ESOP). The legislative

history indicates that section 2057 was intended to encourage transfers of employer securities to ESOP's. See H. Rept. 100-391, at 1045 (1987); 132 Cong. Rec. S7902 (daily ed. June 19, 1986). Congress repealed section 2057 as of December 19, 1989. Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, sec. 7304, 103 Stat. 2301, 2352.

There is no dispute that the estate has satisfied the conditions imposed by section 2057 for deduction of 50 percent of the proceeds from the sale of the Realtron stock to the ESOP. The dispute here, rather, is whether petitioner has taken a double deduction for the interest in the Realtron shares. Respondent argues that petitioner included the date-of-death value of those shares in the QTIP marital deduction and also claimed the ESOP deduction for half the sale proceeds of those shares under section 2057. Respondent contends that section 2056(b)(9) prohibits such a "double deduction".

### 4. *The Allowable Deductions*

We are unaware of any case applying section 2056(b)(9). Nonetheless, we find that the plain language of the statute denies petitioner a double deduction resulting from its claiming the full date-of-death value of the Realtron shares as part of the marital deduction plus the value of half the proceeds as an ESOP deduction. It is well established that statutes are to be construed so as to give effect to their plain and ordinary meaning unless to do so would produce absurd results. *United States v. American Trucking Associations, Inc.,* 310 U.S. 534, 543-544 (1940). Here, our construction of section 2056(b)(9)—that it prevents more than one deduction for the value of any property interest in an estate tax context—gives effect to its plain meaning and produces sensible results.[3]

Section 2056(b)(9) provides that, for estate tax purposes,[4] the value of an "interest in property" may be deducted only once with respect to the same decedent.

---

[3] One of the oldest principles of income tax law is the requirement that the Internal Revenue Code should not be interpreted to allow the taxpayer "the practical equivalent of a double deduction." *Charles Ilfeld Co. v. Hernandez,* 292 U.S. 62, 68 (1934); see *United States v. Skelly Oil Co.,* 394 U.S. 678, 685 (1969); *Ambac Industries, Inc. v. Commissioner,* 487 F.2d 463 (2d Cir. 1973), affg. 59 T.C. 670 (1973). In addition to sec. 2056(b)(9), secs. 642(g), 663(a), 832(d), 834(d), 1312, and 7852 all operate to deny double deductions; see also sec. 1.161-1, Income Tax Regs.: "Double deductions are not permitted. Amounts deducted under one provision of the Internal Revenue Code of 1954 cannot again be deducted under any other provision thereof."

[4] By its terms, sec. 2056(b)(9) controls the provisions of "this section", that is, sec. 2056 itself, "or any other provision of this chapter". In context, "this chapter" is ch. 11 of subtit. B of

The "value" of a deductible interest passing to the surviving spouse is determined as of the decedent's date of death, unless the executors elect the alternate valuation method under section 2032. Sec. 20.2056(b)-4(a), Estate Tax Regs. Here, the parties agree that the value of the Realtron stock, determined as of decedent's date of death, entered into the computation of the value of the residuary estate. The value of that residuary, in the form of a QTIP trust, was included in the amount of the marital deduction under section 2056(a).

The term "interest in property" also has a meaning in the provisions of the Internal Revenue Code relating to the marital deduction. The marital deduction provisions first came into the Internal Revenue Code in the Revenue Act of 1948, ch. 168, sec. 361(a), 62 Stat. 110, 117. The Senate report accompanying that legislation explained the concept of an "interest in property", as compared to the property itself. The report stated "in the case of a bequest, devise, or transfer of an interest which may be satisfied out of, or with the proceeds of, any property of the decedent's general estate or of a trust, the interest * * * [in property] is an interest in any and all of such property." S. Rept. 1013, 80th Cong., 2d Sess. (1948), 1948-1 C.B. 285, 333.

The language from the legislative history helps to make clear that section 2056(b)(9) operates to limit the marital deduction claimed here. When decedent died, his residuary estate constituted "an interest passing to the surviving spouse" within the meaning of section 2056(a), the marital deduction provision. That interest was an interest in "any and all" of the property, or in "the proceeds of" the property that formed the residuary estate. S. Rept. 1013 (Part 2), *supra*, 1948-1 C.B. at 333; see *Meyer v. United States,* 364 U.S. 410 (1960).

Here decedent died possessed of Realtron shares, which were included in his gross estate. The shares were not specifically bequeathed. Thus the shares, or the proceeds of their sale, were among the assets of the general estate out of which the marital bequest could be paid. Cf. sec. 2056(b)(2). Petitioner has failed to show that the cash

---

tit. 26. Ch. 11 is entitled "Estate Taxes", and it includes secs. 2001 through 2210 of the Internal Revenue Code. Sec. 2056(b)(9) thus controls all the estate tax provisions at issue here.

received from the sale of the shares was not used to fund the marital trust. Nor has petitioner identified any provision of the will or of local law that would forbid the sales proceeds from being used for that purpose. Thus, under the facts of this case, the interest in property that passed to decedent's spouse included an interest in "any and all" of the Realtron stock, or in the proceeds of that stock. *Estate of Cunha v. Commissioner,* 279 F.2d 292, 299 (9th Cir. 1960), affg. 30 T.C. 812 (1958). Accordingly, when the estate's executors claimed an ESOP deduction of $1,277,790 for the proceeds from the sale of that stock under section 2057, they of necessity deducted part of the "value" of the surviving spouse's interest. They also claimed a marital deduction for the entire $5,111,160 value of the surviving spouse's interest in that stock. In so doing, they undertook to deduct part of the value of her interest in the Realtron shares "more than once" within the meaning of section 2056(b)(9). Section 2056(b)(9) precludes them from doing so.

Neither the Internal Revenue Code nor the regulations provide specific guidance as to the manner in which section 2059(b)(9) is to be applied with respect to ESOP deductions under section 2057. We believe, however, that the Internal Revenue Code provisions, read together in the manner above, lead to a result that is consistent with the intent of the statute.

As noted above, section 2056(a) provides for a marital deduction of an interest passing to the surviving spouse, except as limited by subsection 2056(b). Section 2056(b)(9) provides such a limit. Here, the entire value of the surviving spouse's interest in the Realtron stock, some $5,111,160, contributed to the marital deduction. Section 2056(b)(9) precludes deducting any part of that amount twice. Thus, the estate is precluded from deducting the additional $1,277,790 amount of the ESOP deduction. Section 2056(a) provides, however, that the limitations of section 2056(b) operate to reduce the amount of the marital deduction. Accordingly, we hold that the marital deduction is to be reduced by $1,277,790, the amount of the ESOP deduction, while the ESOP deduction in the amount of $1,277,790 is to be allowed in full. This will permit petitioner a deduction of the $5,111,160 value of the surviving spouse's interest, but not more or less than the value of that interest. This is consistent with the provision

under section 2056(b)(9) that the value of an interest be deducted "only once". This approach is also consistent with the treatment provided in similar situations, wherein the marital deduction is reduced by the amount of deductions taken under other sections of the Federal estate tax provisions.[5]

Respondent's position is that the marital deduction is to be reduced by the value of the stock—said to be some $2,252,111—at the time it was sold to the ESOP. This approach, however, would reduce the total deductions attributable to the Realtron stock to $3,833,370 (the sum of the value that respondent would allow as a marital deduction, $2,555,580, plus the amount allowed as an ESOP deduction, some $1,277,790). That amount is less than the value of that stock as part of the marital deduction—$5,111,160, a value that respondent does not contest. Respondent's position, therefore, would allow a deduction of *less* than the value of the surviving spouse's interest. Section 2056(b)(9), however, allows the full value of such interest—but no more. Without more guidance from the statute and regulations, we think respondent's position is at odds with section 2056(b)(9).

Petitioner makes a number of arguments in support of its position, but we find them unpersuasive. For example, petitioner quotes the statement in the congressional staff explanation of section 2056(b)(9), set forth above. Staff of Joint Comm. on Taxation, Description of H.R. 6056, Technical Corrections Act of 1982, at 12 (J. Comm. Print 1982). Relying on this statement, petitioner contends that Congress was primarily concerned with the potential double deduction where a marital deduction allowable under section 2056(b)(7) for QTIP property could overlap with the charitable deduction claimed with respect to the remainder interest in the same QTIP property. Petitioner, thus, concludes that Congress did not intend to restrict the marital deduction in the amount of any ESOP deduction.

The staff statement regarding the purpose of section 2056(b)(9) indicates that Congress did intend to prevent a

---

[5] Thus, when proceeds from the sale of property bequeathed to the surviving spouse are used to pay administrative expenses of the estate, the marital deduction is reduced by the amount of such expenses deducted under sec. 2053. Sec. 20.2056(a)-2(b)(2), Estate Tax Regs. Similarly, if property bequeathed to the surviving spouse is damaged by a casualty, the marital deduction is reduced by the amount of the casualty loss deducted under sec. 2054. Sec. 20.2056(a)-2(b)(3), Estate Tax Regs.

double deduction in the charitable remainder/marital deduction context. The statement also indicates, however, that for estate tax purposes, section 2056(b)(9) serves to "clarify" the general congressional intent that "the value of *any* interest in property may be deducted *only once*." Description of H.R. 6056, *supra* at 12 (emphasis added). We believe that this general intent applies to the deduction at issue here.

Further, it is well settled that, where a statute is clear on its face, we require unequivocal evidence of legislative purpose before construing the statute so as to override the plain meaning of the words used therein. *Huntsberry v. Commissioner,* 83 T.C. 742, 747-748 (1984). We perceive no legislative purpose at odds with our reading of section 2056(b)(9). In addition, we note that "if Congress has made a choice of language which fairly brings a given situation within a statute, it is unimportant that the particular application may not have been contemplated by the legislators". *Barr v. United States,* 324 U.S. 83, 90 (1945).

Petitioner contends, alternatively, that it did not receive a double deduction for its interest in the Realtron shares. It offers calculations that purportedly prove that less than 100 percent of the value of the Realtron shares was deducted. Petitioner comes to this conclusion by assuming that, because approximately 25 percent of the value of the gross estate is made up of the value of the Realtron shares ($5,111,160/$20,410,045), only 25 percent of the deductible residuary bequest, some $2,686,490, is made up of the Realtron shares. Adding the $1,277,700 value of the ESOP share yields a total deduction attributable to the Realtron stock of $3,964,280—only 78 percent of the value of that stock as it was included in the gross estate.

Petitioner has the burden of proving that respondent's determination of deficiency is incorrect. Rule 142(a); *Welch v. Helvering,* 290 U.S. 111 (1933). Here, however, petitioner has not demonstrated that the executors allocated the value of the Realtron stock over the entire gross estate.[6] Nor has petitioner shown that all, or any portion, of the proceeds from the sale of the stock passed to a recipient other than the marital trust. The evidence shows that the full date-of-death

---

[6] Petitioner does not contend that State law determines the allocation of the estate's assets, as might be the case when an estate lacks sufficient assets to pay all debts, taxes, and legacies. See, e.g., *Estate of Short v. Commissioner,* 68 T.C. 184 (1977).

value of the Realtron stock, some $5,111,160, was used to determine the value of the residuary that qualifies for the marital deduction. When the $1,277,790 value of the ESOP deduction is considered, it appears that the Realtron stock, with a maximum value of $5,111,160, generated deductions of $6,388,950. We think section 2056(b)(9) precludes the excess deduction.

In this regard, if decedent had bequeathed the Realtron stock directly to his spouse, we think it clear that section 2056(b)(9) would preclude the estate from claiming both a marital deduction for the value of that stock plus an ESOP deduction for the value of the proceeds on the sale of that stock. Plainly, the value of the same interest would be deducted more than once. We do not believe that the prohibition against double deductions for estate tax purposes should be defeated where the executors are able to do indirectly what the decedent could not do directly—that is, use the stock or its proceeds to fund the residuary, claim the full value of that stock as a marital deduction, and claim half the proceeds of the sale of that stock as an ESOP deduction. In this case, however, it appears that petitioner has done exactly that; more to the point, petitioner has not proved otherwise.

Petitioner also contends that the proceeds from the sale of the Realtron shares used to compute the ESOP deduction constitute a different property interest from the value of the Realtron shares used to compute the marital deduction and that the prohibition of section 2056(b)(9) against double deductions does not apply. We disagree. As noted above, the pertinent legislative history explains that the surviving spouse's interest in marital deduction property extends both to the property involved and also to the *proceeds* of that property. S. Rept. 1013 (Part 2), 80th Cong., 2d Sess. (1948), 1948-1 C.B. 331, 333. The District Court's opinion in *Provident Natl. Bank v. United States,* 436 F. Supp. 587 (E.D. Pa. 1977), revd. 581 F.2d 1081 (3d Cir. 1978), cited by petitioner, does not require a different conclusion, as the opinion of the Court of Appeals for the Third Circuit, 581 F.2d at 1086, makes clear.

Petitioner points to the legislative history of section 2057 and contends that section 2057 cannot be limited by the restriction of section 2056(b)(9) because Congress has not

explicitly so limited section 2057. Petitioner states that section 2057 "conspicuously omits even a suggestion that any such condition was intended and affirmatively demonstrates that no limitations on the Section 2057 deduction were contemplated, other than those * * * specifically set forth." We cannot accept petitioner's conclusion. Section 2056(b)(9) was effective in 1981 and relates to double deductions that are derived from any of the provisions of chapter 11; i.e., the estate tax provisions. Section 2057, part of chapter 11, was effective as of 1986. The legislative history shows that Congress, in enacting section 2057, sought to encourage the sale of qualifying shares to an ESOP. We believe, however, that Congress did not want to encourage such sales at a cost of granting a double deduction to an estate. If Congress did not want section 2056(b)(9), which was already a part of the Code, to apply with respect to deductions taken pursuant to section 2057, we think it would have expressly so provided when enacting or, later, when amending section 2057. (We also note that, under our holding herein, it is the marital deduction, and not the ESOP deduction, that will be limited by the provisions of section 2056(b)(9).)

Petitioner cites such cases as *Estate of Miller v. Commissioner,* 400 F.2d 407 (3d Cir. 1968), affg. 48 T.C. 251 (1967), and *Estate of Pfeifer v. Commissioner,* 69 T.C. 294 (1977). In those cases, we determined that the operative statutory language permitted both a charitable and a marital deduction with respect to the same interest in a decedent's property. Since those cases were decided, however, Congress has enacted section 2056(b)(9), which prohibits such double deductions. In this case, a plain reading of the statutes, including section 2056(b)(9), precludes petitioner's claims of the full amounts of both the marital and ESOP deductions based upon the same interest.

Petitioner also urges that, to limit the marital deduction by operation of section 2056(b)(9), the ESOP deduction would have to be a "payment, expense, or encumbrance which reduces the date-of-death value of the property actually bequeathed to the surviving spouse." We know of no such limitation. In fact, petitioner contends that at least one of the reasons that section 2056(b)(9) was enacted was to preclude taking a marital deduction and a charitable remainder deduction for the same interest. A charitable remainder,

however, does not operate as a payment, expense, or encumbrance which reduces the date-of-death value of the property actually bequeathed to the surviving spouse.

Relying upon some language in the legislative history, petitioner contends that section 2057 provides for an exclusion from the gross estate rather than a deduction. We think it sufficient to point out that the plain language of section 2057 uses the phrase "the value of the taxable estate shall be determined by *deducting* from the value of the gross estate * * * [the amount of the ESOP deduction]" (emphasis added). Once again, we will not look behind the language of an unambiguous provision to clear up ambiguity in the legislative history.

Based on the foregoing and due to concessions by the parties,

*Decision will be entered under Rule 155.*